1  Justin H. Sanders (SBN 211488)
   jsanders@sandersroberts.com
2  Anand Singh (SBN 250792)
   asingh@sandersroberts.com
3  **SANDERS ROBERTS LLP**
   515 South Flower Street, 24th Floor
4  Los Angeles, CA 90071
   Telephone: (213) 426-5000
5  Facsimile:  (213) 234-4581

6  Attorneys for Petitioners
   **LIBERTY AND YORK, INC.,**
7  **SKYMARK PROPERTIES**
   **CORPORATION, INC.,**
8  **SKYMARK PROPERTIES II, LLC**
   **SKYMARK SPE, LLC,**
9  **and LAILA ALIZADEH**

10

11              UNITED STATES DISTRICT COURT
12               CENTRAL DISTRICT OF CALIFORNIA
                      WESTERN DIVISION
13

| | |
|---|---|
| 14  LIBERTY & YORK, INC., a Delaware corporation, SKYMARK PROPERTIES CORPORATION, INC., a Delaware corporation, SKYMARK PROPERTIES II, LLC, a Michigan limited liability company, SKYMARK SPE, LLC, a Delaware limited liability company, and LAILA ALIZADEH, a Canadian individual, <br><br> Petitioners, <br><br> v. <br><br> SOUTHFIELD METRO CENTER HOLDINGS, LLC, a Michigan limited liability company, FRIEDMAN MANAGEMENT COMPANY, a Michigan corporation, TACONIC CAPITAL ADVISORS L.P., a Delaware limited partnership, CRE DISTRESSED PROPERTY LLC, a Florida limited liability company, and AXONIC CAPITAL LLC, a Delaware limited liability company, <br><br> Respondents. | **CASE NO. 2:25-cv-06200** <br><br> **PETITION FOR AN ORDER COMPELLING ARBITRATION** <br><br> Petition Filed:   July 8, 2025 |

**PETITION FOR AN ORDER COMPELLING ARBITRATION**

Pursuant to 9 U.S.C. § 4, Petitioners Liberty & York, Inc., Skymark Properties Corporation, Inc., Skymark Properties II, LLC, Skymark SPE, LLC, and Laila Alizadeh submit this their Petition for an Order Compelling Arbitration ("Petition") against Southfield Metro Center Holdings, LLC, Friedman Management Company, Taconic Capital Advisors L.P., and CRE Distressed Property LLC, Axonic Capital LLC, and would respectfully show as follows:

## INTRODUCTION

1. The corporate Petitioners are parties to, or guarantors of, loan documents entered into with Respondent Southfield Metro Center Holdings, LLC ("SMCH"). SMCH purchased the loan documents from a third-party, Green Lake Real Estate Fund, LLC ("Green Lake"), a California mortgage lender and hedge fund located in Los Angeles, California.

2. SMCH, the assignee of the loan documents from Green Lake, conspired with the remaining Respondents, who are non-signatories to the loan documents, and committed numerous violations of the Racketeer Influenced and Corrupt Organizations Act, and used provisions of the loan documents to fraudulently foreclose on a commercial property that secured the loan and depriving Petitioners of millions of dollars in equity and other revenues from the property.

3. One of the operative loan documents, the Promissory Note Secured by Mortgage ("Promissory Note"), contained an arbitration agreement that provides that, "any dispute or controversy under the Loan Documents shall be submitted to arbitration" by a retired judge at ADR Services, Inc. ("ADR").[1] The agreed venue for the arbitration is Los Angeles. (*Id.*).

---

[1] Exhibit A, Promissory Note at ¶ 31.

- 1 -

**PETITION FOR AN ORDER COMPELLING ARBITRATION**

4. The arbitration clause, in its entirety, reads as follows:

> 31. Arbitration. Without limiting Lender's rights to (a) consummate a power of sale foreclosure, (b) seek judicial appointment of a receiver, (c) file suit for judicial foreclosure, or (d) legally pursue any UCC remedies with respect to Personal property collateral, any dispute or controversy under the Loan Documents shall be submitted to arbitration under the Rules of the American Arbitration Association. Said arbitration shall be heard in the County of Los Angeles in the State of California by a retired judge at ADR Services, Inc. to be mutually agreed upon by the parties. To the extent the parties cannot mutually agreed [sic] upon such retired judge, ADR Services, Inc. shall select the arbitrator from the ADR Services panel.
>
> BOTH PARTIES AGREE TO HAVE ANY DISPUTE DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY STATE LAW. BOTH PARTIES AGREE TO GIVE UP ANY RIGHTS THEY MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL . . . IF EITHER PARTY REFUSES TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, THE REFUSING PARTY MAY BE JUDICIALLY COMPELLED TO ARBITRATE. THE AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY FOR BOTH PARTIES.

5. To date, and with the exception of SMCH, each of the Respondents have refused to participate in the arbitration process. Each of the Respondents have taken the position that because they are non-signatories to the Promissory Note, they are not obligated to participate in arbitration proceedings. SMCH, on the other hand, acknowledges that it is a signatory of the Promissory Note as the assignee of the note (and other loan documents) from Green Lake. However, SMCH refuses to participate in arbitration in Los Angeles as specified in the agreement to arbitrate, and insists on arbitrating this dispute in Michigan.

- 2 -
**PETITION FOR AN ORDER COMPELLING ARBITRATION**

6. The Promissory Note and the remainder of the loan documents were the subject of a motion to dismiss in a related matter. Petitioners (excluding Liberty & York and Laila Alizadeh) brought that action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, against Green Lake and others in the United States District Court for the Eastern District of Michigan, *Skymark Properties Corp. v. Morteza Katebian, et al.*, Case no. 2:20-cv-12372-SFC-DRG (Aug. 8, 2020 E.D. Mich.).[2]

7. In that case, Green Lake, a then-named defendant, sought to compel arbitration in Los Angeles pursuant to the arbitration clause in the Promissory Note. In adopting the Magistrate's Report and Recommendation, the Federal district court sitting in the Eastern District of Michigan found that the arbitration clause found in the Promissory Note was enforceable.[3]

---

[2] Exhibit B, Supplemental and Second Amended Complaint. This is but one of a number of related matters by and among one or more of the Petitioners and most of the Respondents and/or their affiliates, agents or co-conspirators: *In re Skymark Properties II, LLC*, Case No. 19-40211 (U.S. Bkcy., E.D. Mich.) (Bankruptcy action related to the Southfield Property that was dismissed based on misrepresentations to the Court, thus allowing SMCH to foreclose on the Southfield Property); *Southfield Metro Center Holdings, LLC v. Skymark Properties II, LLC*, Case No. 2019-170827, Oakland County Circuit Court, State of Michigan, *aff'd per curiam* Mich. Ct. App. December 20, 2020 (A lawsuit predicated on allegations that the loan purchased by SMCH from Green Lake was usurious that was resolved in SMCH's favor); *Morteza Katebian v. Missaghi, et al.*, Case No. 2:18-cv-13379 (Oct. 29, 2018 E.D. Mich.) (Lawsuit involving Ben's false claim to ownership of Liberty & York and the property and damages claims against Petitioners and others that was ultimately dismissed on Petitioners' motion in 2021); *In re Skymark Properties LLC*, Case No. 18-71708, (U.S. Bkcy, N.D. of Ga.) (Bankruptcy action related to the Atlanta Property financed by Extensia located in Morrow, Georgia that was dismissed based upon misrepresentations to the court, thus allowing a Katebian strawman entity to foreclose on the Atlanta Property); *Skymark Properties III, LLC v. Morrow GA Investors, LLC, et al.*, Case No. 2019-cv-327206 in the Superior Court, Fulton County, Georgia (This case sought to unwind the foreclosure on the Atlanta Property and was voluntarily dismissed after some evidence of Ben's and Payam's wrongdoing came to light.); *2399021 Ontario Inc. v. Morteza Katebian et al.*, Case No. CACE 19-019310(07), Circuit Ct. for the 17th Jud. Cir., Broward Cty., Fla. (Lawsuit that was tried and judgment entered finding that the Katebians and associates fraudulently obtained a residential property from Petitioners in Florida.).

[3] *See generally* Exhibit C, E.D. Mich. District Court Order; Exhibit D, E.D. Mich. Magistrate Report and Recommendation at 38 (finding that Promissory Note included a "valid agreement to arbitrate.").

8. The Magistrate's Report and Recommendation, adopted by the district court, also recognized that, under Sixth Circuit law, the district court lacked jurisdiction to compel arbitration due to the selection of Los Angeles County as the forum for the parties' arbitration.[4]

9. Petitioners' claims in arbitration ("Claim") are predicated on Respondents' RICO violations and their acts and omissions in violation of a number of Michigan law fraud-based causes of action. SMCH is, by virtue of assignment of the loan documents, including the Promissory Note, is a signatory. The Remaining Respondents, while non-signatories to the loan documents, are, by virtue of their association with SMCH, the recipients of direct benefits from the Promissory Note and the loan documents, and their unlawful acts alleged herein, are subject to the agreement to arbitrate Petitioners' Claim.

## THE PARTIES

### Petitioners

10. Liberty & York, Inc. ("Liberty & York") is a Delaware corporation and is effectively the ultimate parent company for each of corporate Petitioners. Liberty & York held the shares or membership interests of these entities, including various companies who owned, controlled or managed a 4-tower commercial building complex in suburban Detroit (the "Southfield Property").

11. Skymark Properties Corporation, Inc. ("Skymark Properties") is a Delaware corporation whose shares are wholly owned by Liberty & York. Skymark Properties holds membership interests in Skymark Properties II, LLC and Skymark SPE, LLC, and Skymark SPE, LLC, who owned, controlled or managed the Southfield Property, and acted as pass-through entities leaving Skymark Properties to collect all rents and manage all monies from the various

---

[4] Ex. C at 5 (". . . this Court lacks jurisdiction to compel arbitration of the Arbitrable Claims in California."); Ex. D at 50-52.

companies.

12. Skymark Properties II, LLC ("Skymark Properties II"), is a Michigan limited liability company who originally managed the Southfield Property along with Skymark SPE, LLC.

13. Skymark SPE, LLC ("Skymark SPE"), is a Delaware limited liability company who originally managed the Southfield Property along with Skymark Properties II.

14. Laila Alizadeh ("Laila") is a resident of Canada and is the sole shareholder of Liberty & York and as such, was effectively the owner of the Southfield Property, by and through entities she controls.

### Respondents

15. SMCH is a Michigan limited liability company doing business in California and may be served with process by serving its registered agent for service of process, David B. Friedman, at 34975 W. 12 Mile Road, Suite 100, Farmington Hill, Michigan 48331.

16. SMCH acted as a special purpose real estate entity who, upon information and belief, is directed and controlled by its owners and managers, as well as Detroit-area commercial real estate developer David Friedman ("Friedman"). In November 2018, SMCH, along with its owners, members, managers and investors, Taconic Capital Advisors, L.P., Axonic Capital, LLC, Friedman Management Company, and CRE Distressed Property LLC, knowingly engaged in fraudulent conduct in their efforts to purchase the $17.7M Promissory Note (and other loan documents) from Green Lake. SMCH then foreclosed on the Southfield Property. SMCH caused Laila's companies, i.e., the Petitioners, to be unable to redeem, thus losing millions of dollars in equity in the Southfield Property, and also precluded them from collecting rents and other revenues from the property.

**PETITION FOR AN ORDER COMPELLING ARBITRATION**

17. Taconic Capital Advisors, L.P. ("Taconiccap") is a Delaware limited partnership doing business in California and may be served with process by serving its registered agent for service of process, Corporation Service Company, at 80 State Street, Albany, New York 12207.

18. Taconicap is an owner, member, and manager of, and investor in, SMCH. As such, Taconicap authorized, directed and participated in the conduct complained of herein. Taconicap is a co-conspirator with SMCH and the other Respondents. Taconicap knowingly participated in funding the fraudulent purchase of the Promissory Note and the loan documents.

19. Taconicap received direct benefits from the Promissory Note and the other loan documents, including millions of dollars in equity in the Southfield Property, as well as benefits in the form of rents and other revenues derived from the property.

20. Axonic Capital LLC ("Axoniccap") is a Delaware limited liability company doing business in California and may be served with process by serving its registered agent for service of process, Clayton Degiacinto, at 390 Park Avenue, 15th Floor, New York, New York, 10022.

21. Axonicap is an owner, member, and manager of, and investor in, SMCH. As such, Axonicap authorized, directed or participated in the conduct complained of herein. Axonicap is a co-conspirator with SMCH and the other Respondents. Axonicap knowingly participated in funding the fraudulent purchase of the Promissory Note and the loan documents.

22. Axonicap received direct benefits from the Promissory Note and the other loan documents, including millions of dollars in equity in the Southfield Property, as well as benefits in the form of rents and other revenues derived from the property.

23. Friedman Management Company ("FMC") is a Michigan corporation doing business in California and may be served with process by

serving its registered agent for service of process, David B. Friedman, at 34975 W. 12 Mile Road, Suite 100, Farmington Hill, Michigan 48331.

24. FMC is an owner, member, and manager of, and investor in, SMCH. As such, FMC authorized, directed or participated in the conduct complained of herein. FMC is a co-conspirator with SMCH and the other Respondents. FMC knowingly participated in funding the fraudulent purchase of the Promissory Note and the loan documents and, upon information and belief, managed or participated in the management of the Southfield Property.

25. FMC received direct benefits from the Promissory Note and the other loan documents, including millions of dollars in equity in the Southfield Property, monies received for its management of the property, as well as benefits in the form of rents and other revenues derived from the property.

26. CRE Distressed Property LLC ("CRE") is a Florida limited liability company doing business California and may be served with process by serving its registered agent for service of process, Leo J. Salvatori, at 9132 Strada Place, Naples, Florida 34108.

27. Upon information and belief, CRE is an indirect subsidiary or affiliate of Axonicap, who along with SMCH (and other related entities), owns (or at one time, owned) membership interests in SMCH, and participated in the management of, and invested in, SMCH. As such, CRE authorized, directed or participated in the conduct complained of herein. CRE is a co-conspirator with SMCH and the other Respondents. CRE knowingly participated in funding the fraudulent purchase of the Promissory Note and the loan documents.

28. CRE received direct benefits from the Promissory Note and the other loan documents, including millions of dollars in equity in the Southfield Property, as well as benefits in the form of rents and other revenues derived from the property.

**PETITION FOR AN ORDER COMPELLING ARBITRATION**

29. Taconiccap, Axonicap, FMC, and CRE are owners, members, managers, and are associated with, and co-conspirators with SMCH, who, by virtue of the assignment from Green Lake, is the signatory on the Promissory Note. Unless noted otherwise, these entities are collectively referred to as "SMCH Respondents." By virtue of their common ownership, management, corporate relationships, overlapping financial interests in SMCH and the Southfield Property, including their funding of SMCH for the purchase of the Southfield Property, the direct financial benefits they received from the loan documents, including the Promissory Note, their knowing involvement in the fraudulent real estate transactions at issue, as well as the other unlawful conduct complained of herein, the SMCH Respondents should be compelled to arbitrate Petitioners' Claim. Further, the SMCH Respondents also authorized, directed or participated in the conduct complained of herein.

## JURISDICTION AND VENUE

30. This Petition is brought pursuant to 9 U.S.C. §§ 4, 5.

31. This Court has subject-matter jurisdiction over the dispute set out in this Petition pursuant to 28 U.S.C. §§ 1331 and 1367 because the enforceable arbitration provision at issue is in connection with the Petitioners' Claim arising from a controversy between Petitioners and Respondents that falls under the RICO statutes, including 18 U.S.C. § 1964.

32. This Court has personal jurisdiction over at least one of the named Respondents. For example, SMCH purchased the mortgage (including the Promissory Note) from Green Lake, a California mortgage lender and hedge fund located in Los Angeles, California. SMCH and the purchase of the mortgage from Green Lake, was funded by the SMCH Respondents, Taconicap, Axonicap, FMC, and CRE, each of whom are owners, members, and managers of SMCH, or otherwise exercised direction and control over SMCH.

33. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in Los Angeles. Venue is also proper in this Court under 28 U.S.C. § 1391(b)(3) because, in the Promissory Note, Petitioners and Green Lake (the assignor of the Promissory Note and the loan documents to SMCH) agreed that "any dispute or controversy under the Loan Documents shall be submitted to arbitration" in Los Angeles and conducted by a retired judge at ADR Services, Inc., thus there is no district court in which this action may otherwise be brought.[5] Moreover, as held by the Eastern District of Michigan, the court lacked jurisdiction to Green Lake's motion to compel arbitration in Los Angeles.[6]

34. Venue would also be proper in this Court in connection with a lawsuit over the subject matter arising out of the controversy between Petitioners and Respondents under 18 U.S.C. § 1965.

## SUMMARY OF PETITIONERS' ARBITRATION CLAIM

35. Petitioners' Claim arises from a series of events revolving around a valuable piece of commercial real estate, the Southfield Property. It features a pair of dual-citizen Iranian and Canadian fraudsters named Morteza "Ben" Katebian, a/k/a Morteza Katebian Tabari ("Ben"), and his son Payam Katebian ("Payam"). Ben was a former friend and trusted business associate of the owner of Petitioners Liberty & York, Skymark Properties, and Laila. Laila and her late husband Ara Missaghi ("Ara"), deceased as of June 17, 2024, had known Ben and Payam for many years. Ben's United States residency according to his Permanent Resident Card (commonly known as "Green Card") is in Los Angeles County, California.

36. Laila owned several residential and commercial properties in Canada. Ben became a trustee over several of these properties, a common

---

[5] Ex. A at ¶ 31.
[6] *See* Exs. C and D at 5 and 50-52, respectively.

- 9 -

**PETITION FOR AN ORDER COMPELLING ARBITRATION**

practice in Canada. In 2011, Laila began to invest in commercial real estate in the U.S. She purchased properties in Houston, Atlanta, and Michigan.

37. Laila purchased the Southfield Property for $6.25 million (hereafter million is "M") in 2012. She invested over $9M into its renovation and improvements. By 2016, the Southfield Property was appraised at an as-is market value of $34M and a prospective value upon stabilization of $53.8M. By 2019, the Southfield Property was appraised at an as-is market value of $34.9M and a prospective value upon stabilization of $60M.

38. Petitioners Skymark Properties II and Skymark Properties SPE managed the Southfield Property. Petitioner Skymark Properties holds the membership interests in these companies, and its shares are wholly owned by Liberty & York. Liberty & York essentially serves as the parent company for the Southfield Property. The properties were managed by an experienced real estate manager, Troy Wilson ("Wilson").

39. In 2016, Liberty & York was looking to re-finance the Southfield Property. The broker for the loan insisted that the U.S. lenders with whom he had a relationship needed a guarantor/borrower in the United States. Laila is Canadian and could not serve as the guarantor.

40. Ben had permanent resident status in Los Angeles County, California, in the U.S. Ben volunteered to guarantee the loan refinancing the Southfield Property.

41. Laila agreed to transfer the shares in the parent company, Liberty & York, to Ben to satisfy the lenders. She and Ben executed a stock transfer agreement.

42. At the same time Laila had Ben sign a trust agreement stating that he held the shares of Liberty & York as a trustee for Laila. The properties themselves remained in the Skymark operating companies. Wilson remained their non-Member manager and property manager.

**PETITION FOR AN ORDER COMPELLING ARBITRATION**

43. As indicated above, Green Lake is a California mortgage hedge fund, and it loaned a total of $17.7M on the Southfield Property. At the time of the loan, Laila's equity in the buildings was between $17M and $37M. Petitioners' Claim arises from events that led to the Southfield Property ending up in the hands of Respondent SMCH and the SMCH Respondents.

44. Taconicap, Axonicap, FMC, and, upon information and belief, CRE, are the members of SMCH. FMC, Taconicap, Axonicap, and, upon information and belief, CRE, were owners, members, and managers of SMCH, and funded SMCH and the purchase of the Green Lake loan, including the Promissory Note, by SMCH while FMC also managed the Southfield Property. The SMCH Respondents also authorized, directed or participated in the conduct complained of herein.

45. Each of SMCH and the SMCH Respondents received direct benefits from the Promissory Note and the other loan documents acquired and assigned from Green Lake. These direct benefits include millions of dollars in equity in the Southfield Property that rightfully belonged to Petitioners had Respondents not engaged in the unlawful and fraudulent acts complained of herein and in Petitioners' Claim. These direct benefits also include millions of dollars the Respondents received from the tenants of the Southfield Property in the form of rent payments and other revenues derived from the property. Additionally, FMC also received direct benefits for the management of the Southfield Property.

46. To summarize, while Ben was a trustee, he and Payam stole the Southfield Property. Ben lied that he was the equity owner of the Southfield Property. Respondent SMCH (and the SMCH Respondents) knew Ben was a crook and used Ben to fraudulently facilitate their purchase of the loan on the Southfield Property from Green Lake, including the Promissory Note, and to fraudulently prevent petitioners from re-financing or redeeming the Southfield

Property during foreclosure. Respondents obtained a property that Green Lake itself valued at over $40M for less than half that amount.

47. Each of the SMCH Respondents conspired with SMCH and one another, as well as with Ben, Payam, and their lawyers, Plunkett Cooney, P.C.,[7] in order to receive direct benefits from the loan documents, including the Promissory Note, by depriving Petitioners of millions of dollars of equity, as well as proceeds they would have otherwise been entitled to, such as millions of dollars in collected rent payments and other sources of revenue from the Southfield Property. Respondents covered up the scheme for as long as they could.

**Petitioners Filed an Arbitration Demand with ADR and Served Respondents**

48. Petitioners filed a demand for arbitration with ADR on or about July 10, 2023.[8] With this demand, Petitioners submitted extremely detailed factual allegations to ADR to support its Claim and the numerous causes of action leveled against Respondents for RICO violations, including a conspiracy to violate RICO, as well as several Michigan law fraud-based causes of action, including tortious interference with contract, tortious interference with business expectancy, silent fraud, negligent misrepresentation, unjust enrichment, conversion and aiding and abetting tortious conduct.

---

[7] Plunkett Cooney is a law firm. The firm represented Ben and Payam Katebian and, upon information and belief, advised them on how to steer the Southfield Property to SMCH. Under agreements dated July 2019, and September 2020, Plunkett Cooney conspired with and was secretly paid by SMCH to maintain a fraudulent litigation styled *Morteza Katebian v. Missaghi, et al.*, Case No. 2:18-cv-13379 (October 29, 2018 E.D. Mich.), so that Ben could claim he was the "real" owner of the Petitioner companies, thus allowing SMCH to enforce the loan agreement against Petitioners and foreclose on the Southfield Property, thus preventing Petitioners from re-financing or redeeming the property.

[8] A copy of Petitioners' Demand in Arbitration (less exhibits), which is incorporated herein by reference, is attached hereto as Exhibit E.

49. In connection with Petitioners' demand, ADR was provided with the contact information for each of the Respondents so that ADR could commence with the service of process. Upon information and belief, ADR served each of the Respondents with Petitioner's Arbitration demand in accordance with its rules on or about September 11, 2023.

50. SMCH is the assignee of the loan documents, including the Promissory Note, and assumed the obligations thereunder, including the arbitration provision.[9] SMCH has agreed that it is a proper party to the arbitration provision, but it refuses to participate in arbitration in Los Angeles as specified by the Promissory Note.

51. The remainder of the SMCH Respondents informed ADR and Petitioners that they refuse to arbitrate because they are non-signatories to the Promissory Note.[10]

## ARGUMENT AND AUTHORITIES TO COMPEL ARBITRATION

52. Section 2 of the Federal Arbitration Act ("FAA") provides:
> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a

---

[9] Exhibit F, Assignment from Green Lake to SMCH.

[10] Subsequent to the filing of the arbitration, on or about September 21, 2023, the Petitioners were subject of a Mareva injunction entered by the Ontario Superior Court of Justice that resulted in the "freeze" of all of their assets. *Reyhani, et al., v. Arash Missaghi, et al.*, Court File No. CV-23-007050000-0000. On or about February 6, 2024, Petitioners were subject to a second Mareva injunction entered by the Ontario Superior Court of Justice that also froze all of their assets. *Maxol Wealth Investments Inc. v. Arash Missaghi, et al.*, Court File No. CV-24-00714218-0000. These matters were extensively litigated and the freeze on the assets for purposes of Petitioners' Claim and this Petition were not lifted until the end of May 2025. It should also be noted that on June 17, 2024, Laila's husband, Ara, was the victim of a homicide in Toronto, Canada. The corporate petitioner in the second Mareva injunction was a company co-owned by Alan Katz, the perpetrator of the crime. In addition to Ara, and before killing himself, Katz also killed Samira Yousefi, a co-respondent with Ara in the Mareva injunction matters.

   contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U.S.C. § 4.

53. To enforce an arbitration provision, Section 4 of the FAA allows:

   A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . .

9 U.S.C. § 4.

54. The Promissory Note and the other loan documents involve commerce.

55. The Promissory Note contains a valid and binding arbitration provision. Indeed, the Michigan district court held as much in connection with then-defendant's (Green Lake's) motion to dismiss and to compel arbitration.[11] Further, the Michigan district court recognized that it lacked jurisdiction to compel arbitration in the parties' agreed to forum of Los Angeles, California.[12] Therefore, pursuant to 9 U.S.C. § 4, the Court should enter an order directing the parties to arbitrate this dispute in accordance with the arbitration provision found in the Promissory Note, including each of the non-signatory Respondents.

56. Non-signatories to an agreement may be compelled to arbitrate under an otherwise valid arbitration clause under ordinary contract and agency principles. As expressed by the Supreme Court, "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract

---

[11] *See generally* Ex. C; Ex. D at 38.
[12] Ex. C at 5; Ex. D at 50-52.

- 14 -

**PETITION FOR AN ORDER COMPELLING ARBITRATION**

1  through 'assumption, piercing the corporate veil, alter ego, incorporation by
2  reference, third-party beneficiary theories, waiver and estoppel. . .'" *Arthur*
3  *Andersen LLP v. Carlisle*, 556 U.S. 624, 631, 129 S. Ct. 1896, 1902, 173 L. Ed.
4  2d 832 (2009) quoting 21 R. Lord, WILLISTON ON CONTRACTS § 57:19, p.
5  183 (4th ed. 2001).

6       57.    The Ninth Circuit has recognized these same ordinary contract and
7  agency principles in order to compel non-signatories to arbitrate, including: (1)
8  incorporation by reference, (2) assumption, (3) agency, (4) veil piercing/alter
9  ego, and (5) estoppel. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006)
10 (internal citations omitted). Further, because Petitioners' allegations, including
11 those sounding in RICO and fraud, arise out of and rely upon the existence of
12 the Promissory Note containing the arbitration provision, the non-signatory
13 Respondents may be compelled to arbitrate. *See, e.g.*, *S.S.L. Invs., LLC v. Asha
14 Oroskar*, No. CV 22-2953-RSWL-ASx, 2022 U.S. Dist. LEXIS 186931, at *6
15 (C.D. Cal. 2022) (non-signatory compelled plaintiff to arbitrate RICO, fraud,
16 fraudulent concealment, unlawful business practices, and false advertising
17 causes of action arising out of or relying upon the existence of an agreement
18 containing an arbitration clause).

### SMCH

20      58.    SMCH concedes that it is obligated to arbitrate as the assignee of
21 the Promissory Note executed by Green Lake and assigned to SMCH.[13] As the
22 assignee of the Promissory Note, thus assuming the obligations thereunder,
23 SMCH should be compelled to arbitrate as per the terms of the arbitration
24 agreement, which must be conducted with ADR in Los Angeles. To date,
25 SMCH agrees that it is obligated to arbitrate as the assignee, but refuses to
26 arbitrate in Los Angeles, California, as specified by the Promissory Note.

---

[13] Ex. F.

Instead, SMCH has insisted that the arbitration be conducted in Detroit, Michigan.

59. By virtue of its assumption of the loan documents, including the Promissory Note, by assignment, SMCH should be compelled to arbitrate Petitioners' Claim in Los Angeles according to the terms of the arbitration provision found in the Promissory Note.

## SMCH RESPONDENTS

60. The SMCH Respondents should be compelled to arbitrate in accordance with the arbitration provision found in the Promissory Note.

61. Notwithstanding the fact that each of the remaining SMCH Respondents have common ownership by and through their membership interests, management and control of SMCH, as well as the funding of SMCH and the purchase of the Promissory Note and the remainder of the loan documents, multiple independent reasons exist as to why the SMCH Respondents should be compelled to arbitrate Petitioners' Claim.

62. First, each of the SMCH Respondents should be estopped from disclaiming their obligation to arbitrate in accordance with the Promissory Note. The SMCH Respondents have attained a direct benefit under the Promissory Note (and the remainder of the Loan Documents). For example, each of the SMCH Respondents received their proportionate equity interest in the Southfield Property amounting to millions of dollars that rightly belonged to one or more of the Petitioners had it not been for the conduct complained of herein. "[N]onsignatories have been held to arbitration clauses where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" Comer, 436 F.3d at 1101 (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir. 2001); see also Asha Oroskar, 2022 U.S. Dist. LEXIS 186931, at *5 ("Equitable estoppel 'precludes a party from

claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'") (internal citations omitted).

63. Here, each of the SMCH Respondents exploited the benefits of the loan documents, including the Promissory Note, by directly receiving monetary benefits. As a result, they should be estopped from attempting to avoid the burdens of the Promissory Note.

64. Second, by virtue of their common ownership and management of SMCH, each of the SMCH Respondents should be compelled to arbitration based on the notion that SMCH was acting as their agent to engage in the unlawful conduct complained of herein.  Alternatively, because the SMCH Respondents authorized, directed or participated in the conduct complained of herein, SMCH acted as the alter ego for each of the SMCH Respondents in order to effectuate the fraudulent transactions alleged in this Petition and in Petitioners' Claim.

65. Third, the SMCH Respondents have authorized, directed or participated in the conduct complained of herein, and conspired with SMCH (a signatory by virtue of assignment and assumption of the Promissory Note) and one another to deprive Petitioners of the Southfield Property (as well as their equity in the property and other revenues derived from the property).  *See*, *e.g.*, *Kruse v. AFLAC Int'l, Inc.*, 458 F. Supp. 2d 375, 383–84 (E.D. Ky. 2006) ("Where a party alleges that a nonsignatory engaged in a conspiracy with a signatory, the nonsignatory may compel arbitration.").  Further, Petitioners' causes of action, including those sounding in RICO and fraud, arise out of and rely upon the existence of the Promissory Note containing the arbitration provision.  *See*, e.g., Asha Oroskar, 2022 U.S. Dist. LEXIS 186931, at *6.

66. The SMCH Respondents should be compelled to arbitrate based on ordinary contract and agency principles, including the theories of estoppel, agency, and alter ego.  Additionally, as is evident by Petitioners' Claim, the

**PETITION FOR AN ORDER COMPELLING ARBITRATION**

SMCH Respondents committed numerous RICO violations, conspired to commit RICO violations, and engaged in fraudulent conduct, claims of which are predicated upon and expressly rely upon the existence of the Promissory Note. Thus, because the SMCH Respondents authorized, directed or participated in the conspiratorial and fraudulent conduct complained of herein, they should be compelled to arbitrate.

## RELIEF REQUESTED

67. Based on the foregoing, Petitioners respectfully request that this Court issue an order:

    a. Directing Respondents to arbitrate the parties' dispute in accordance with the terms of the arbitration provision found in the Promissory Note pursuant to 9 U.S.C. § 4; and

    b. For such other relief as to which they may show themselves entitled that the Court may deem just and proper.

Dated: July 8, 2025　　　　　　　　Respectfully submitted,

**SANDERS ROBERTS LLP**

_____
Justin H. Sanders
Anand Singh
515 South Flower Street, 24th Floor
Los Angeles, CA 90071
Telephone: (213) 426-5000
Facsimile: (213) 234-4581
Email: jsanders@sandersroberts.com
Email: asingh@sandersroberts.com

Fred A. Schwartz (Florida SBN 260538)
*Pro Hac Vice to be filed*
**SHAHADY WURTENBERGER, P.A.**
200 East Palmetto Park Road, Suite 103
Boca Raton, FL 33432
Telephone: (213) 426-5000
Facsimile: (213) 234-4581
Email: fschwartz@swlawyers.law

**PETITION FOR AN ORDER COMPELLING ARBITRATION**

Stephen W. Abbott (Texas SBN 00795933)
*Pro Hac Vice to be filed*
**LOOPER GOODWINE PC**
1300 Post Oak Boulevard, Suite 750
Houston, TX 77056
Telephone: (213) 426-5000
Facsimile: (213) 234-4581
Email: sabbott@loopergoodwine.com

Attorneys for Petitioners
**LIBERTY AND YORK, INC.,
SKYMARK PROPERTIES
CORPORATION, INC.,
SKYMARK PROPERTIES II, LLC
SKYMARK SPE, LLC,
and LAILA ALIZADEH**